## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

NEKELIA COLEMAN,

        Plaintiff,

v.                               Case No:  6:12-cv-1315-Orl-37GJK

TARGET CORPORATION,

        Defendant.

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motion:

| | |
|---|---|
| **MOTION:** | **JOINT MOTION TO APPROVE SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT (Doc. No. 20)** |
| **FILED:** | **February 8, 2013** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.  BACKGROUND

On August 28, 2012, Nekelia Coleman (hereafter "Coleman"), on behalf of herself and others similarly situated, filed a Complaint, alleging that Defendant, Target Corporation, improperly classified her as an exempt employee and failed to pay her overtime wages, in violation of the Fair Labor Standards Act (hereafter "FLSA"), 29 U.S.C. § 216(b).  Doc. No. 1. On September 29, 2012, Defendant filed its answer and affirmative defenses.  Doc. No. 9.  On October 17, 2012, Ian Miles (hereafter "Miles" and collectively with Coleman as "Plaintiffs"), filed his consent to join the lawsuit.  Doc. No. 16.

On February 8, 2013, the parties jointly moved the Court to approve their settlements (hereafter "Motion"), attaching copies of the settlement agreements (hereafter "Agreements"). Doc. No. 20.  In the Motion, the parties represent that their settlements are a "compromise of highly disputed claims that provide[] an appropriate and just resolution for all parties to this case."  Doc. No. 20 at 1.  The parties dispute whether Plaintiffs were improperly classified as exempt employees or they sustained damages.  Doc. No. 20 at 3.  Notwithstanding this dispute, Defendant has agreed to pay Coleman $3,750.00 in wages and $3,750.00 in liquidated damages, for a total of $7,500.00.  Doc. Nos. 20 at 5; 20-1 at 1.  Defendant has agreed to pay Miles $7,250.00 in wages and $7,250.00 in liquidated damages, for a total of $14,500.00.  Doc. Nos. 20 at 5; 20-2 at 1.  Defendant also agrees to pay Plaintiffs' counsel $22,000.00 in attorney's fees. Doc. Nos. 20 at 5; 20-1 at 1; 20-2 at 1.  The parties indicate that Plaintiffs agreed to release all claims raised in the Complaint and "any other claims they may have" against Defendant in exchange for the aforementioned sums.  Doc. No. 20 at 5.

In support of approving the settlements, the parties represent that they were vigorously represented by counsel; the complexity, expense and length of the litigation favors approving the settlement; the parties had sufficient information to make an informed decision; the probability of Plaintiffs' success is uncertain and the settlements represent 75% of their estimated back pay; and the amount of attorney's fees paid is reasonable, and was negotiated separately from the sums paid to Plaintiffs.  Doc. No. 20 at 7-9.

In addition to the payment terms outlined above, the parties' Agreements contain identical provisions addressing released claims, which provide:

> **(b)**   **Release:**   <u>In exchange for the terms of this Agreement,</u> [Plaintiffs] release[] (i.e., gives up) <u>all known and unknown claims</u> <u>she may have against [Defendant]</u>, its current and former, direct and indirect owners, parents, subsidiaries, and all other affiliates

and related entities, and their current and former partners, employees, agents, and other related parties ("Released Parties") <u>arising from or related to allegations of having not been paid all wages owed</u> in accordance with state or federal law <u>and any other wage-and-hour or related claims that were or could have been alleged in the Lawsuit or that derive from the same factual predicate</u> to the fullest extent permitted by law, including, but not limited to, all claims of allegedly unpaid wages, including overtime wages; alleged meal and rest period violations; alleged failure to pay all wages due upon termination; alleged breach of contract or unjust enrichment; any and all related penalties; interest; liquidated damages; and attorneys' fees, costs and expenses.

Doc. Nos. 20-1 at 2; 20-2 at 1-2 (emphasis added).  Thus, Plaintiffs agree to release Defendant from:  1) claims for unpaid wages; and 2) any other wage and hour or related claims that were raised in this action, are based on the same factual predicate as this action, or could have been raised in this action.

The Agreements also address unknown claims and Plaintiffs' understanding of the parties' settlements.  Doc. Nos. 20-1 at 2-3; 20-2 at 1-2.  These provisions state:

**(e)    Unknown Claims:**  [Plaintiffs] represent[] that [they are] intentionally releasing claims that [they do] not know that [they] might have and that, with hindsight, [they] might regret having released.  [Plaintiffs have] not assigned or given away any of the claims [they are] releasing.

. . . .

**(g)    Consideration of Agreement:**  [Plaintiffs] represent[] that [they have] carefully read this Agreement and that [they have] been advised to consult with an attorney before signing this Agreement and [have] done so.  [Plaintiffs] further represent[] that [they] fully understand[] the terms of the Agreement; that [they are] entering into it knowingly and voluntarily; and all of the [their] representations in it are true.

Doc. Nos. 20-1 at 2; 20-2 at 1-2.  Thus, Plaintiffs represent that they are releasing claims they do not know about, have carefully read the Agreements, have been advised by counsel and are knowingly and voluntarily entering into the Agreements.

## II. LAW

In *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.  First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . .  The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.  When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id*. at 1352-53.  Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' Agreement is unenforceable.  *Id*.; *see also Sammons v. Sonic-North Cadillac, Inc.*, No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032 at *5 (M.D. Fla. Aug. 7, 2007) (noting that settlement of FLSA claim in arbitration proceeding is not enforceable under *Lynn's Foods* because it lacked Court approval or supervision by Secretary of Labor).  Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food*, 679 F.2d at 1354-55.  If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. *Id* at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider

the following factors:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See Leverso v. South Trust Bank of Ala. Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994);

*Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-1592-Orl-22JGG, 2007 WL 328792 at *2 (M.D. Fla.

Jan. 8, 2007).  The Court should be mindful of the strong presumption in favor of finding a

settlement fair.  *Cotton v. Hinton*, 559 F. 2d 1326, 1331 (5th Cir. 1977).[1]

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee

agreements.  *Silva v. Miller*, 307 F. Appx. 349, 351 (11th Cir. 2009) (citing *Skidmore v. John J.*

*Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of

the contingent fee agreement; for it may well be that Congress intended that an employee's

recovery should be net . . . .")).  In *Silva*, 307 F. Appx. at 351-52, the Eleventh Circuit held:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA. FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee. *See United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir.1984) ("the

---

[1] *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (all decisions from the Fifth Circuit prior to October 1, 1981 are binding on the Eleventh Circuit).

determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); *see also Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F.Supp.2d 1259 (M.D.Fla.2008).

*Id.*[2]   In order for the Court to determine whether the proposed settlement is reasonable, counsel for the claimant(s) must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorneys' fees, costs or expenses pursuant to a contract between the plaintiff and his or her counsel, or otherwise. *Id.* When a plaintiff receives less than a full recovery, any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery.[3]   Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorneys' fees and costs.[4]   It is the Court's responsibility to ensure that any such allocation is reasonable. *See Silva*, 307 F. Appx. at 351-52.   In doing so, the Court uses the lodestar method for guidance. *See Comstock v. Florida Metal Recycling, LLC*, Case No. 08-81190-CIV, 2009 WL 1586604 at \*2 (S.D. Fla. June 5, 2009).   As the Court interprets the *Lynn's Foods* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorneys' fees provision under the parties' settlement agreement using the lodestar method as a guide.   In such a case, any compensation for attorneys' fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

   When the payment of attorney's fees is negotiated separate and apart from the amount to

---

[2] In the Eleventh Circuit, unpublished cases are not binding, but are persuasive authority.

[3] From a purely economic standpoint, a defendant is largely indifferent as to how its settlement proceeds are divided as between a plaintiff and his/her counsel.   Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[4]This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

be paid to the plaintiff, the Honorable Gregory A. Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) <u>represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.</u>

*Bonetti v. Embarq Mgmt. Co.*, No. 6:07-cv-1335-Orl-31GKJ, 2009 WL 2371407 at *5 (M.D. Fla. Aug. 4, 2009) (emphasis added). Judge Presnell maintained that if the matter of attorney's fees "[is] addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id.*

## III. ANALYSIS

### A. Settlement Amounts

This case involves disputed issues of FLSA coverage, which constitutes a bona fide dispute. Doc. Nos. 1, 11. The parties are represented by independent counsel who are obligated to vigorously represent their clients. Doc. Nos. 1, 11. Under the Agreements, Coleman agrees to accept a total of $7,500.00, representing $3,750.00 for wages and $3,750.00 for liquidated damages. Doc. Nos. 20 at 5; 20-1 at 1. Miles agrees to accept a total of $14,500.00, representing $7,250.00 for wages and $7,250.00 for liquidated damages. Doc. Nos. 20 at 5; 20-2 at 1. Plaintiffs' counsel will receive $22,000.00 for attorney's fees. Doc. Nos. 20 at 5; 20-1 at 1; 20-2 at 1. The parties indicate that Plaintiffs' settlements represent 75% of their estimated back pay. Doc. No. 20 at 9. Thus, the Agreements constitute a compromise of Plaintiffs' FLSA claims. After reviewing the Agreements and considering the parties' reasons for approving the

Agreements, it is **RECOMMENDED** the Court find the amounts of Plaintiffs' settlements to be reasonable.

####    B.   Release Provisions

In *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1347 (M.D. Fla. 2010), the court was presented with an FLSA settlement agreement wherein the plaintiff knowingly and voluntarily agreed to waive and release the defendant, and all related persons, from:

> any and all claims of any nature whatsoever Plaintiff has arising out of his employment with Defendant, known or unknown, including but not limited to, any claims Plaintiff may have under federal, state or local employment, labor, or anti-discrimination laws, statutes and case and law and specifically claims including, but not limited to, any claims or allegations contained in or relating to the Lawsuit, arising under the federal Age Discrimination in Employment Act, The Older Worker Benefit Protections Act, the Civil Rights Acts of 1866 and 1964, as amended, the Americans with Disabilities Act, the Employment Retirement Income Security Act of 1974 ("ERISA"), the Family and Medical Leave Act, the Rehabilitation Act of 1973, the Fair Labor Standards Act, the Labor-Management Relations Act, the Equal Pay Act and the Worker Adjustment Restraining and Notification Act, the Florida Civil Rights Act, the Florida AIDS Act, the Florida Equal Pay Law, the Florida Wage Discrimination Law, the Florida Law Prohibiting Discrimination on the Basis of Sickle Cell Trait, the Florida Constitution, Florida common law and any and all other applicable state, federal, county or local ordinances, statutes or regulations, including claims for attorneys' fees.

*Id.* (emphasis added).  Thus, the plaintiff was required to release the defendant from any and all claims that could be asserted, even if they were unknown and unrelated to the plaintiff's FLSA claim.

The Honorable Steven D. Merryday found that the "pervasive release effectively eludes confident assessment and, consequently, the 'fairness' of the proposed compromise effectively eludes confident assessment."   *Id.* at 1348.   Judge Merryday reasoned that general releases, which gratuitously exchange known and/or unknown claims in return for a compromised amount

of unpaid overtime wages, are unfair because: 1) the FLSA requires employers, without exception, to pay the full amount owed to the employee; and 2) "a valuable, non-cash concession extended to the employer in exchange for otherwise 'full compensation' effectively reduces the employer's payment by an amount equal to the value of the concession (and accordingly reduces the employer's payment to less than 'full compensation')." *Id.* at 1348-49.   Judge Merryday stated:

> An employee seeking to vindicate his FLSA rights often desperately needs his wages, and both the employee and the employer want promptly to resolve the matter. In a claim for unpaid wages, each party estimates the number of hours worked and the plaintiff's wage (i.e., establishes a range of recovery), and the court evaluates the relative strength of the parties' legal argument asserted in the particular case. However, in an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release-that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release. Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate.

*Id.* at 1351-52.   Describing general releases in FLSA cases as a "side deal," Judge Merryday concluded that an employer is not permitted to use an employee's FLSA claim to leverage a release of known or unknown claims unconnected to the FLSA from the employee.   *Id.*   As a result, Judge Merryday concluded that a "pervasive release in settlement of an FLSA action is both unfair and incapable of valuation." *Id.* at 1352.

In *Bright v. Mental Health Resource Center, Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804 at *4 (M.D. Fla. Mar. 14, 2012), the Honorable Roy B. Dalton adopted Judge Merryday's reasoning in *Moreno*.   Judge Dalton stated that "[p]ervasive, overly broad [general] releases have no place in settlements of most FLSA claims." *Id.* (citing *Moreno*, 729 F. Supp. 2d

at 1350-52).  Judge Dalton also stated:

> The FLSA requires employers to pay, unconditionally, a worker's wages. Employers cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages. This is unfair, and it provides employers with a windfall should some unknown claim accrue to the employee at a later time. Further, in the typical FLSA case, the indeterminate nature of general releases also prevents the Court from being able to evaluate the claims that have been waived by employees, thereby making a fairness determination difficult if not impossible.

*Id.* at *4.  Thus, Judge Dalton reasoned that it is unfair to require an employee to provide a pervasive and overly broad general release in exchange for settlement proceeds in an FLSA case. *Id.*

Under *Moreno* and *Bright*, parties whose FLSA settlement agreements contain a general release have two options if they desire court approval of their settlement agreement.  First, the parties may execute an addendum to the settlement agreement omitting the general release. Second, the parties may provide the Court with sufficient information, such as an affidavit, regarding any other claims that the employee is knowingly releasing, including the fair value of such claims, whether those claims are being compromised and, if so, the reasons for such compromise and the amount of consideration paid.[5]  Absent the two options outlined above, District Courts that follow *Moreno* and *Bright* will not approve an FLSA settlement agreement containing a pervasive general release.[6]

---

[5] In *Moreno*, 729 F. Supp. 2d at 1351-52, Judge Merryday stated that because a possibility exists that the employee will release unknown claims, parties who choose the second option have no guarantee that a court following *Moreno* will approve the settlement even if the parties submit information regarding the known claims released.

[6] Parties also have a third option, but it does not provide for Court approval of the FLSA settlement agreement, and parties who pursue this option do so at their own peril. *See Cabral v. Alberto & Alberto Enter. Corp.*, No. 6:12-cv-742-Orl-37DAB, Doc. No. 15 (M.D. Fla. Jul. 19, 2012). Pursuant to Rule 41(a)(1)(A)(ii), Federal Rules of Civil Procedure, parties may file a joint stipulation of dismissal with prejudice.  *See Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012) (holding that the plain language of Rule 41(a)(1)(A)(ii) requires that a stipulation of dismissal is self-executing and becomes effective upon filing). Because the FLSA requires that any bargained for compromise of an employee's FLSA claim be approved by the District Court or the United States

Unlike the general releases in *Moreno* and *Bright*, the release provisions in the Agreements are limited to claims for unpaid wages and any other wage and hour or related claims that were raised in this action, are based on the same factual predicate as this action, or could have been raised in this action. *See* Doc. Nos. 20-1 at 2; 20-2 at 1-2. When read in context with the release provisions, the "Unknown Claims" provisions simply acknowledge that Plaintiffs are intentionally releasing any unknown claims that fall within the scope of the above-mentioned release.[7]

The limited scope of the release provisions allay any concern that Plaintiffs may be giving up an unknown, but valuable, claim that is completely unrelated to the FLSA claim, and which "confers an undeserved and disproportionate benefit on the employer and effects an unanticipated, devastating, and unfair deprivation on the employee." *Moreno*, 729 F. Supp. 2d at 1351. The Agreements do not require Plaintiffs to release any unknown claims that are unrelated to their wage and hour claims. They only obligate Plaintiffs to release claims for unpaid wages and any other wage and hour or related claims that were raised in this action, are based on the same factual predicate as this action, or could have been raised in this action.[8] Thus, unlike the general release in *Moreno*, the Court can evaluate the fairness of the Agreements because the releases are limited to employment, wage-related claims. *See Bright*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804 at *4 (stating that a general release in an FLSA settlement agreement prevents

---

Department of Labor, if the parties resolve the FLSA claims on their own and file a joint stipulation of dismissal under Rule 41(a)(1)(A)(ii), the settlement will be unenforceable. *Cabral*, No. 6:12-cv-742-Orl-37DAB, Doc. No. 15 at 2. Moreover, counsel may, in some foreseeable circumstances be subject to certain collateral claims. *Id.* Nevertheless, a joint stipulation of dismissal is an option for parties whose agreement contains a pervasive general release.

[7] In the Motion, the parties represent that Plaintiffs agree to release "the claims brought in the Complaint and any other claims they have against [Defendant]." Doc. No. 20 at 5. This statement is overly broad and does not accurately characterize the limited scope of the releases.

[8] Further, Plaintiffs are represented by competent counsel who has discussed and advised Plaintiffs regarding the scope of the release and their relinquishment of unknown claims. *See* Doc. Nos. 20-1 at 3; 20-2 at 2. With this advice and consent, Plaintiffs are "knowingly and voluntarily" agreeing to the limited releases.

the court from evaluating the nature of the claims being waived, thereby making a fairness determination difficult, if not impossible); *see also Heath v. Hard Rock Café Int'l, Inc.*, No. 6:10-cv-344-Orl-28KRS, 2011 WL 5877506 at *4 (M.D. Fla. Oct. 28, 2011) (recommending that release provision limited to wage and hour claims was not a prohibited "side deal" that undermined the fairness or reasonableness of the parties' FLSA settlement).

Accordingly, it is **RECOMMENDED** that the Court find the Release provisions to be limited in scope and the Agreements to be fair and reasonable.

### C. Attorney's Fees

Under the Agreements, Plaintiffs' counsel will receive $22,000.00 in attorney's fees. Doc. Nos. 20-1 at 1; 20-2 at 1.  In the Motion, the parties represent that the amount of attorney's fees was "negotiated separately from the amounts paid to Plaintiffs."  Doc. No. 20 at 9.  When the amount of attorney's fees is "addressed independently and seriatim," from the amount paid to the plaintiff "there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."  *Bonetti*, No. 6:07-cv-1335-Orl-31GKJ, 2009 WL 2371407 at *5. Accordingly, it is **RECOMMENDED** that the Court find the amount of attorney's fees to be reasonable.

### IV. CONCLUSION

In this case, the Agreements constitute a compromise of Plaintiffs' claims; the Motion states a reasonable basis for such compromise; the Agreements only require Plaintiffs to release wage and hour or other related claims; and the parties represent that Plaintiffs' claims were resolved separately and apart from the issue of attorney's fees and costs.  Given the record in this case, there is no reason to believe that Plaintiffs' recoveries are adversely affected by the amount

of fees and costs to be paid to their counsel.  Accordingly, it is **RECOMMENDED** that the Court find the Agreements to be fair and reasonable.

      **THEREON**, it is **RECOMMENDED** that:

1.  The Motion be **GRANTED** only to the extent that the Court finds the parties' settlements are fair and reasonable; and

2.  The Court enter an order dismissing the case with prejudice and direct the Clerk to close the case.

      Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.  **If the parties have no objection to the undersigned's report and recommendation, they may promptly file a notice of no objection**.

      **RECOMMENDED** in Orlando, Florida on March 1, 2013.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy